UNITED STATES v. HERTZOG.
Cr. No. 12405.

United States District Court
M. D. Pennsylvania.
June 23, 1954.

J. Julius Levy, U. S. Atty., Scranton, Pa., Roger A. Woltjen, Asst. U. S. Atty., Milford, Pa., for plaintiff.

Darlington Hoopes, Reading, Pa., for defendant.

FOLLMER, District Judge.

Defendant has been indicted for refusal to be inducted into the armed forces of the United States of America, in violation of Title 50 U.S.C.A.Appendix, § 462. On arraignment defendant entered a plea of not guilty to the charge and waived a jury trial. The case was accordingly tried to the Court without a jury.

At the trial the Government produced the file of Local Board No. 28, Reading, Pennsylvania, being its complete file in relation to this defendant, to which offer counsel for defendant indicated he had no objection. An examination of this file reveals that defendant prepared the Selective Service System Classification Questionnaire, which was received by his Local Board on April 23, 1951. In this questionnaire defendant stated that he was a minister of religion, regularly serving as such, and that he was ordained November 22, 1947 by "Jehovah God through the Watchtower Bible & Tract Society at Philadelphia, Pennsylvania." He further stated that since July 21, 1948 he had been, and still was, employed as an "Indentured Apprentice Laboratory Technician" by Textile Machine Works, Foundry Division, Reading, Pennsylvania, whose business was the manufacture of grey iron, aluminum, and brass castings and patterns; that his work involved the chemical quantitative analysis and physical analysis of foundry materials and products; that he was a full time student at "Wyomissing Polytechnic Institute," Wyomissing, Pennsylvania, majoring in the technical curriculum preparing for a metallurgical laboratory technician, and that he expected to receive from said institution a certificate for pre-engineering on June 1, 1951. He requested that he be classified in Class 4-D, claiming

exemption as a duly ordained minister of religion under Section 6(g) of the Selective Service Act of 1948.[1]

In addition to his request for exemption as a minister he stated in the questionnaire that by reason of religious training and belief he was conscientiously opposed to participation in war in any form, and requested the Local Board to furnish him a Special Form for Conscientious Objectors (SSS Form No. 150), which he was to complete and return to the Local Board for its consideration. With his questionnaire defendant submitted a letter in support of his claim for 4–D classification.

On April 27, 1951, defendant filed the special form for conscientious objector, stating as follows:

"(B) I am, by reason of my religious training and belief, conscientiously opposed to participation in war in any form and I am further conscientiously opposed to participation in noncombatant training or service in the armed forces. I, therefore, claim exemption from combatant training and service and, if my claim is sustained, I understand that I will, because of my conscientious objection to noncombatant service in the armed forces, be deferred as provided in Section 6(j) of the Selective Service Act of 1948."

And with this form defendant submitted affidavit of the company servant of defendant's company to the effect that defendant is an ordained minister and one of Jehovah's Witnesses. To the same effect were also the affidavits of five other company officials, the unsworn statement of thirty-one members of the same company, and two additional affidavits from other Jehovah's Witnesses ministers.

On August 7, 1951 defendant was classified 1–A by his Local Board.

On the final page of the questionnaire under the heading "Minutes of Action by Local Board and Appeal Board," there appeared, inter alia, the following, "8–30–51 Registrant appeared before the Board—no action taken."

As a part of the complete Local Board file in evidence, there appeared a paper which, according to the testimony of the Clerk of the Board, correctly reflected the action taken by the Board on the occasion of defendant's personal appearance on August 30, 1951. This paper read as follows:

"The registrant called on the board and stated he felt he was entitled to a 4–D classification being a minister of the gospel (Jehovah Witness). The chairman quoted from the Selective Service Act of 1948 in which it was brought out that Congress had narrowed the definition of a minister—the quotation which was read to the registrant, as listed on Page 4 of Pennsylvania State Selective Service Memorandum, dated August 7, 1951, 'Ministerial Status of Jehovah Witnesses'. The registrant was asked whether he devoted his full time to ministerial duties and he replied he did not devote his full time but just evenings and Sundays only. He stated he was regularly employed as an apprentice machinist for the Textile Machine Works. The members of the Board present were in agreement that the registrant could not qualify for a 4–D classification and so informed the registrant. He was advised of his right of appeal which he stated he would exercise in writing within the next ten days."

On September 6, 1951, defendant wrote to the Local Board reaffirming his claim for a 4–D classification, stating that the *"least possible* classification I should be given under the present law

---

1. 62 Stat. 604, 611, 50 U.S.C.A.Appendix, § 456(g). Its title was changed on June 19, 1951, from "Selective Service Act of 1948" to "Universal Military Training and Service Act," 65 Stat. 75, 50 U.S. C.A.Appendix, § 451(a).

would be 4–E or that of a conscientious objector opposed to combatant and noncombatant service in the armed forces," and requesting that his file and the "enclosed appeal letter" be forwarded to the Appeal Board.

On March 24, 1952, the complete file of registrant was forwarded by the Local Board to the Appeal Board for the State of Pennsylvania. On May 29, 1952, the Appeal Board forwarded the file to the United States Attorney for review and hearing in accordance with Section 1626.25 of the Regulations for the purpose of securing an advisory recommendation, stating in the transmittal letter, inter alia, as follows: "The file of the above registrant has been reviewed by members of the Appeal Board and they are of the opinion that he is not entitled to a class lower than Class I–O or to Class I–O."

Under date of December 29, 1952, the Hearing Officer advised the registrant as follows:

"I have reviewed the file in your matter and do not find any evidence unfavorable to your claim to be classified as a conscientious objector."

On March 25, 1953, the Department of Justice forwarded to the Appeal Board its advisory recommendation in which it set forth that as required by Section 6(j) of the Universal Military Training and Service Act an inquiry was made and an opportunity to be heard on his claim for exemption as a conscientious objector was given the registrant by Honorable Curtis Bok, Hearing Officer. The Department reviewed at length the claims of the registrant and the report of the Federal Bureau of Investigation. It stated that the Hearing Officer concluded that registrant was opposed to military service of any type by reason of religious training and belief and accordingly recommended a 1–O classification. The Department then stated:

"Although there probably is no doubt of registrant's sincere and devoted church membership, his acceptance of the principles of theocratic warfare. as evidenced by the pamphlets he submitted which were cited above and his own statements at the interview, clearly removes him from the purview of the Universal Military Training and Service Act. This statute requires opposition to participation in 'war in any form' if one is to be exempt from combatant duty. Therefore, registrant's claim should be denied in its entirety.

"After consideration of the entire file and record, the Department of Justice finds that the registrant's objections to combatant and noncombatant service are not sustained. It is, therefore, recommended to your Board that registrant's claim for exemption from both combatant and noncombatant training and service be not sustained."

The recommendations of the Department were reviewed by the Appeal Board April 9, 1953, and on that date, on reconsideration, the registrant was classified 1–A.

Thereafter, on June 3, 1953, defendant refused to be inducted. He was indicted and the present trial resulted.

■ Prior to trial defendant served a subpoena on the Federal Bureau of Investigation, at its Philadelphia office, to produce its complete secret investigative report, and he also served a subpoena on Honorable Curtis Bok, Hearing Officer, to produce his report. There is nothing in the file to indicate that at any time did defendant request that he be instructed as to the general nature and character of any unfavorable evidence developed by the investigation of the Department of Justice. He was not entitled to the FBI report, nor was he entitled to the names of the persons interviewed by the investigators.[2] Fur-

2. United States v. Nugent, 346 U.S. 1, 5, 6, 73 S.Ct. 991, 97 L.Ed. 1417.

thermore, he was advised by the Hearing Officer that the file did not contain any evidence unfavorable to his claim to be classified as a conscientious objector. Motion to quash the subpoena was accordingly granted.

In his questionnaire defendant requested a 4–D classification (Minister of Religion). He subsequently filed the Special Form for Conscientious Objector (SSS–150) requesting in effect classification of 4–E (conscientious objector opposed to both combatant and noncombatant training and service). At no time did he request a 1–A–O classification (conscientious objector available for noncombatant military service).

On four separate occasions at the trial defendant, in effect, refused to state whether he would have complied with the Local Board's order had he received a 1–A–O classification. He obviously was asking for the ultimate, he would settle for a 4–E if he could not receive 4–D.

█ The burden was on the defendant to show clearly that he was within the exemption which he claimed, but no more than that.[3] In this connection, at the trial, counsel for defendant in a colloquy with the Court and the United States Attorney over defendant's claim for a ministerial classification, stated as follows: "The issue in this case, * * * is * * * whether there is a basis in fact for the classification made by the Draft Board, and whether he was given due process in the proceedings before those Boards. * * * I am not basing this on his ministerial capacity. I am basing it on a conscientious objector claim and the denial of due process in regard to that."

█ Our function here is not to weigh the evidence to determine whether the classification made by the Local Board was justified but rather to ascertain if there is no basis in fact for the classification given defendant,[4] and to search the record for some affirmative evidence to support the Local Board's overt or implicit finding that a registrant has not painted a complete or accurate picture of his activities.[5]

The undisputed evidence in this case clearly indicates that defendant is a bona fide member of the sect known as "Jehovah's Witnesses" and because of his belief in the teachings of that sect is conscientiously opposed to military service. He claimed exemption both as a minister and as a conscientious objector. The Hearing Officer concluded that he was opposed to military training and accordingly recommended a 1–A–O classification (conscientious objector available for noncombatant military service).

█ The Department of Justice based its recommendation that defendant's claim for exemption from combatant duty be denied in its entirety on his acceptance of the principles of theocratic warfare; that since he approved of, and apparently would participate in, theocratic wars, he was not opposed to "participation in war in any form," thus construing "war in any form" to include theocratic wars. This construction has been held unreasonable and untenable and must be rejected.[6]

██ A careful examination of the record in this case, in the light of the directives of the Estep and Dickinson opinions, points unmistakenly to the conclusion that the Appeal Board had no evidence before it to support the classification of defendant in Class 1–A. Therefore, since there is no basis in fact for the 1–A classification which was given defendant, the order to report for induction being a nullity, defendant was guilty of no offense in refusing to submit to induction.

3. United States v. Bender, 3 Cir., 206 F. 2d 247.

4. Estep v. United States, 327 U.S. 114, 122, 66 S.Ct. 423, 90 L.Ed. 567.

5. Dickinson v. United States, 346 U.S. 389, 396, 74 S.Ct. 152.

6. Taffs v. United States, 8 Cir., 208 F.2d 329, 331; United States v. Hartman, 2 Cir., 209 F.2d 366, 368.

**637**

Having searched the record for some affirmative evidence to support the Local Board's overt or implicit finding that defendant has not painted a complete or accurate picture of his activities, none has been found.

In the light of the conclusion reached, it becomes unnecessary to consider whether or not defendant because of his employment was disqualified from entitlement to a 4–E classification (conscientious objector opposed to both combatant and noncombatant training and service), or what the net result would have been had the Board followed the suggestion of the Hearing Officer and classified defendant 1–A–O (conscientious objector available for noncombatant military service).

Defendant's motion for judgment of acquittal will be granted.