**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Watson Woodson JENNISON, Jr.,**
**Defendant-Appellant.**

**No. 18147.**

United States Court of Appeals
Sixth Circuit.

Oct. 21, 1968.

Certiorari Denied March 10, 1969.

See 89 S.Ct. 1024.

Victor Rabinowitz, New York City, Leonard B. Boudin, New York City, on brief; Dorian Bowman, New York City, of counsel, for appellant.

James F. Cook, Asst. U. S. Atty., Lexington, Ky., George I. Cline, U. S.

Atty., Lexington, Ky., on brief for appellee.

Before O'SULLIVAN, PHILLIPS and McCREE, Circuit Judges.

O'SULLIVAN, Circuit Judge.

We here consider the appeal of Watson Woodson Jennison, Jr., from his conviction, upon jury trial, of refusing to submit to induction into the Armed Forces of the United States, in violation of 50 U.S.C.App. § 462. Appellant contends that his conviction was unlawful because his local draft board had refused to give proper consideration to his claim of entitlement to a classification of conscientious objector.

Appellant was registered with Local Board No. 2 in Huntington, West Virginia. He was classified II-S (student) in December, 1961, and re-classified I-A (available for military service) in December, 1963. On February 14, 1966, the board ordered him to report for induction on March 14, 1966. On March 2, 1966, the board received a letter from appellant stating that "I believe I now qualify under the Selective Service Act for alternative civilian service." He requested that his classification be reconsidered and that he be granted a rehearing, and he asked for permission to file Selective Service Form No. 150 (application for conscientious objector classification). This was the first time he had informed the board of his conscientious objector beliefs. The board sent appellant the requested form and sent his file to the State Director for a ruling. Upon receipt of the Director's recommendation that the classification not be reopened, the board informed appellant on March 7 that the induction order remained in effect. The board received appellant's completed Form 150 on March 9, and on that date again informed him that his classification would not be reopened. Also on March 9, appellant wrote the State Director requesting a reopening of his classification and a hearing, but the Deputy State Director informed him on March 11, that his classification could not be reopened. On March 14, appellant appeared at the induction center at Ashland, Kentucky and refused to submit to induction.

We affirm the district court for two reasons. *First,* this court's decision in United States v. Taylor, 351 F.2d 228 (6th Cir. 1965) adopted the rule that a draft board is not required to consider a claim of conscientious objection first asserted after notice of induction has been received, even if a conversion to conscientious objection has allegedly matured after receipt of such notice. *Second,* the presentations made by appellant after his receipt of notice of induction were not such as to require the Selective Service authorities to find that, in such period, there had occurred a change in his status resulting from circumstances "over which the registrant [appellant] had no control."

Appellant's request was based upon Section 6(j) of the Military Selective Service Act of 1967, 50 U.S.C.App. § 456 (j), which provides in part as follows:

"Nothing contained in this title * * * shall be construed to require any person to be subject to combatant training and service in the armed forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form."

The State Director's recommendation, which was followed by the local board, and the board's determination subsequent to the receipt of Form 150, were based upon a Selective Service Regulation, 32 C.F.R. § 1625.2, which reads in part as follows:

"The local board *may* reopen and reclassify anew the classification of the registrant * * * if such request is accompanied by written information presenting facts not considered when the registrant was classified, which, if true, would justify a change in the registrant's classification; * * * provided * * * the classification of a registrant *shall not* be reopened after the local board has mailed to such registrant an Order to Report

for Induction * * * unless the local board first specifically finds there has been a change in the registrant's status resulting from circumstances *over which the registrant had no control.*" (Emphasis supplied.)

1. The rule of United States v. Taylor.

This court's decision in *Taylor,* supra, sustained the validity of Regulation 1625.2 and ruled it was within the power of the draft board to employ it to foreclose precisely what was done in this case, namely, an assertion after several years of deferments that conversion took place a few days after receipt of notice of induction.

■ This court said in Taylor:

"Generally, religious convictions of the nature of conscientious objection 'to participation in war in any form' arise from deep and abiding beliefs held for a long period of time. Their assertion in the immediate aftermath of an induction notice would be no more persuasive than notice of such would be at a port of departure or on the eve of battle. * * *

"It seems reasonable to this court (and in accord with the great weight of authority) for regulations of the selective service system to provide that a claim of conscientious objector status must be made before the individual concerned has been notified to report for induction." 351 F.2d at 230.

■ And as the Tenth Circuit has pointed out in Keene v. United States, 266 F.2d 378 (10th Cir. 1959):

"It does not seem unreasonable or derogatory to the spirit and purpose of the exempting statute to provide by regulation that no request for reopening and reclassification shall be entertained after notice to report for induction is mailed. Otherwise, the whole machinery of the selective service process may conceivably be disrupted by last minute changes in status for purposes of avoidance. Such is the manifest purpose of the proviso in Regulation 1625.2." 266 F.2d at 393.

This position is the same as that announced in United States v. Beaver, 309 F.2d 273 (4th Cir. 1962); Parrott v. United States, 370 F.2d 388 (9th Cir. 1966); Davis v. United States, 374 F.2d 1 (5th Cir. 1967).

Appellant relies heavily upon the argument that the adoption or crystallization of his conscientious objection after receipt of notice of induction constituted a circumstance "over which the registrant had no control," and thus both the statute and regulation require the local board to give consideration to the registrant's request for conscientious objector status no matter when it was filed. Appellant finds authority for this argument in United States v. Gearey, 368 F. 2d 144 (2d Cir. 1966), cert. denied, 389 U.S. 959, 88 S.Ct. 335, 19 L.Ed.2d 368 (1967), rehearing denied, 389 U.S. 1010, 88 S.Ct. 561, 19 L.Ed.2d 611 (1967), but in no other Court of Appeals decision.

■ Several cases, in fact, specifically reject appellant's argument. The Fifth Circuit in *Davis,* supra, said, "Belated development of conscientious objection is not a change in status beyond the control of registrant." 374 F.2d at 4. An interpretation of the regulation that maturing of conscientious objection was a change in status beyond the registrant's control would be "a strained interpretation of the regulation." United States v. Schoebel, 201 F.2d 31, 33 (7th Cir. 1953). Such a reading "would make redundant and useless any finding by the Board subsequent to the filing of the conscientious objector's claim." Boyd v. United States, 269 F.2d 607, 610 (9th Cir. 1959). Distinction of *Taylor* from the case at bar is asserted on the ground that Taylor had become a conscientious objector prior to his receipt of notice of induction.[1] We, however, do

---

1. "*Sometime in 1961*—Appellant [Taylor] asserts he became a convert to the religion of Islam (Black Muslim)." 351 F. 2d at 229. He was not notified to report for induction until 1962.

not read *Taylor* as giving any significance to such circumstance in arriving at the rule it announces.

### 2. Time of appellant's conversion.

■ The board was justified in holding that appellant's evidence did not disclose a change in circumstances beyond his control. His letter to the board in which he disclosed his conscientious objector status read, in part:

> "*For the past two years, ever since approximately my twenty-fourth birthday,* I have been studying the basis of religious conscientious objection to war, and *I believe I now qualify* under the Selective Service Act for alternative civilian service contributing to the maintenance of the national health, safety or interest." (Emphasis supplied.)

The language, "I believe I now qualify," does not convey an impression of sudden crystallization or conversion. In addition, appellant's completed Form 150 revealed to the board that he had been a pacifist for many years and while in college had objected to serving in an ROTC unit, the objection apparently prompted by conscientious objection to war.

It appears that appellant's beliefs likely had matured prior to receipt of his induction notice, and under these circumstances every Circuit having faced the question has held that classification cannot be reopened. Even the Second Circuit in *Gearey* said, "The Local Board must first determine when an applicant's beliefs matured. If the Board properly concludes that the claim existed before the notice was sent, the classification may not be reopened." 368 F.2d at 150.

■ The granting of exemptions to draftees is a matter of grace and the burden is upon the person seeking exemption to establish his right thereto. All factual questions are for the board and its decisions are final. Dickinson v. United States, 346 U.S. 389, 395, 401, 74 S.Ct. 152, 98 L.Ed. 132 (1953).

We are satisfied that the board made a reasonable and proper finding that appellant's evidence did not meet his burden of showing that his crystallization of conscientious objection occurred after receipt of his induction notice and was beyond his control.

Judgment affirmed.

McCREE, Circuit Judge (dissenting):

I respectfully dissent from the opinion of the Court.

Appellant's sole contention is that his classification of I-A, which made him available for military service, was unlawful because his local draft board refused to give proper consideration to his claimed eligibility for the classification of conscientious objector.

The chronology of events leading to appellant's indictment is important to a determination of this issue. Appellant was registered with Local Board No. 2 in Huntington, West Virginia. He was classified II-S (student) in December, 1961, and was reclassified I-A (available for military service) in December, 1963. On February 14, 1966, appellant was ordered to report for induction on March 14, 1966. On March 2, 1966, the board received a letter from appellant stating that he believed he was qualified for classification as a conscientious objector. Appellant requested that he be permitted to file Selective Service Form No. 150 (application for conscientious objector classification), that his classification be reopened, and that he be granted a hearing. The Board sent appellant the requested form and, prior to return of this form by appellant, sent his file to the State Director for a recommendation. Upon receipt of the Director's recommendation that the classification not be reopened, the Board informed appellant on March 7 that the induction order would remain in effect. The Board received appellant's completed Form 150 on March 9, and on that date again informed him that his classification would not be reopened. On March 14, appellant appeared at the induction center and refused to submit to induction.

The record makes clear that the State Director's recommendation, which was followed by the Board, and also the Board's determination subsequent to the receipt of Form 150, were based on the following regulation promulgated under the Selective Service Act:

The local board may reopen and consider anew the classification of a registrant (a) upon the written request of the registrant, the government appeal agent, any person who claims to be a dependent of the registrant, or any person who has on file a written request for the current deferment in a case involving occupational deferment, if such request is accompanied by written information presenting facts not considered when the registrant was classified, which, if true, would justify a change in the registrant's classification; or (b) upon its own motion if such action is based upon facts not considered when the registrant was classified which, if true, would justify a change in the registrant's classification; provided, in either event, *the classification of a registrant shall not be reopened after the local board has mailed to such registrant an Order to Report for Induction (SSS Form No. 252) or an Order to Report for Civilian Work and Statement of Employer (SSS Form No. 153) unless the local board first specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant had no control.* 32 C.F.R. § 1625.2 (emphasis added).

It was the view of both the Director and the Board that conscientious objection which matures after an order to report for induction has been received is not "a change in the registrant's status re-sultant from circumstances over which the registrant had no control." Appellant contends, however, that conscientious objection which ripens after receipt of the notice is such a change, and that the failure of the Board to determine the time at which his conscientious objection matured renders his classification unlawful.[1]

Appellant relies primarily upon United States v. Gearey, 368 F.2d 144 (2d Cir. 1966), cert. denied, 389 U.S. 959, 88 S.Ct. 335, 19 L.Ed.2d 368 (1967), rehearing denied, 389 U.S. 1010, 88 S.Ct. 561, 19 L.Ed.2d 611 (1967). In *Gearey,* the court observed that the statute upon which a claim of conscientious objection is based, 50 U.S.C.App. § 456(j), contains no limitation with regard to the time in which the claim must be asserted:

Nothing contained in this title * * * shall be construed to require that any person be subject to combatant training and service in the armed forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form * * *.

The court held that despite the absence of a time limit in the statute, the regulation relied upon by the government in the instant case could, for reasons of efficient administration, validly preclude consideration of a claim of conscientious objection by one whose claim crystallized prior to his notice of induction. The court further held, however, that the maturing of a claim of conscientious objection subsequent to an induction notice is a circumstance over which a registrant has no control, basing this holding both upon its view of the psychology of conscientious objection and upon the policy

1. On November 4, 1966, Local Board No. 2, at the suggestion of its Appeals Agent, granted appellant a hearing with regard to the matter of whether any change in circumstances had taken place which would permit reopening of his classification. Appellant argues here that this hearing, held after his refusal to be inducted, is irrelevant to the legality of his classification at the time of induction. I would find it unnecessary to pass on this contention, since it is clear from the testimony of the Board's clerk at appellant's trial that the Board at the November 4 hearing did not consider the question of the time at which appellant's conscientious objection had matured.

of the conscientious objection provisions of the Selective Service Act. The court suggested, however, that "the belatedness of a claim may be a factor in assessing its genuineness." 368 F.2d at 149–150.

Other courts have agreed that conscientious objection which matures subsequent to an induction notice is the kind of change in status which permits a classification to be reopened under the regulation. Keene v. United States, 266 F.2d 378 (10th Cir. 1959); United States v. Brown, 129 F.Supp. 237 (D.N.J. 1955). Still others have held that the regulation can in no way limit the availability of a claim of conscientious objection. United States v. Underwood, 151 F.Supp. 874 (E.D.Pa.1955); United States v. Crawford, 119 F.Supp. 729 (N.D.Calif.1954). On the other hand, the approach of *Gearey* has, on occasion, been specifically rejected. Boyd v. United States, 269 F.2d 607 (9th Cir. 1959); United States v. Schoebel, 201 F.2d 31 (7th Cir. 1953).

I am persuaded by the opinion in United States v. Underwood, supra, that regulation 1625.2 cannot foreclose consideration of a claim of conscientious objection *whenever* made because of the clear statutory language in 50 U.S.C. App. § 456(j) that no person conscientiously opposed to participation in war shall be subject to combatant training for service. If the statute is literally construed, the regulation cannot stand unless it is interpreted not to apply to claims of conscientious objection.

At the very least, if the regulation is applied to such claims for purposes of administrative efficiency, following *Gearey,* we should not rule as a matter of law that the maturing of a belief of conscientious objection is a circumstance over which a registrant has control. Appellant's file contains no such finding and the record is devoid of any psychological testimony establishing that proposition. Indeed, it would seem that conscientious objection which one can turn off and on at will is not that state of conscience and belief described in the statute. Whatever the validity of the psychological speculations of the various courts which have considered this matter,[2] it is clear that the maturing of conscientious objection is not under the control of a registrant to the same extent and in like manner of, for example, enlisting in the Army Reserve which might provide a basis for deferment. See Ex parte Hannig, 106 F.Supp. 715 (N.D. Calif.S.D.1952). In any event, the regulations must be interpreted to implement the policy of the Selective Service Act, and the careful protection afforded claims of conscientious objection by the Act requires, at the very least, that the regulations not be construed so as to limit unduly the assertion of these claims.

I do not understand United States v. Taylor, 351 F.2d 228 (6th Cir. 1965), upon which the majority relies, to dictate a contrary result. In *Taylor,* the contention was not advanced that the registrant's conscientious objection arose subsequent to receipt of his induction order.

The majority opinion recites that no other court of appeals decision supports *Gearey.* However, Keene v. United States, 266 F.2d 378 (10th Cir. 1959), which the majority opinion cites, in referring to a change of status due to a change of conscience occurring after the induction notice was mailed, states at p. 384: "If such change did occur, the board erroneously refused to reopen and review and, an appeal lies therefrom by force of statute, although no provision in the Regulations is made therefor."

The majority opinion also states that the Board was justified in holding that appellant's evidence did not disclose a change in circumstances beyond his control. The fact of the matter is the Board

---

**2.** Religious literature is replete with examples of sudden conversions precipitated by crisis, e. g. Saul of Tarsus (later St. Paul) on the Road to Damascus and by apparently irrelevant events, e. g. Gotama Buddha under the Bohdi Tree.

made no such finding and refused to consider the contention on the ground that the regulations precluded re-opening the classification except for a change of circumstances over which he had no control and that conscientious objection apperceived after an order to report for induction is not such a change in status.

I also respectfully disagree with the majority's interpretation of appellant's request for reclassification as a conscientious objector. The opinion does not consider his communication dated March 9, which makes clear his contention in the following language: "There are several reasons why I feel that you should find that there has been a change in my status resulting from circumstances of which I had no control. But without a hearing it would be impossible for you to know these facts."

I find no basis for the comment in the majority opinion that appellant's objection to serving in an ROTC unit while in college is inconsistent with the subsequent maturing of an awareness of conscientious objection. Reference to his completed Form 150 indicates the following: "ROTC on West Va. State Campus because I was required and forced to join; I objected then, and would not join now if in the same situation under any circumstances." This position is consistent with an evolving awareness of religious scruples which culminated in a matured, ripened conviction of conscientious objection after receipt of the induction notice. At the very least, appellant should have been afforded a hearing to determine whether there had been a bona fide change of status because of a change of conscience over which he had no control and occurring after the notice to report was mailed. Alternatively, since there is no suggestion that the Draft Board disbelieved appellant and since its decision was based upon its supposed and erroneous inability to regard the maturing of his conscientious objection as a circumstance beyond his control, the indictment should be dismissed. I would reverse.